UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNETTE THOMPSON,

        Plaintiff,                                     Hon. Hala Y. Jarbou

v.                                                   Case No. 1:21-cv-490

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Commissioner's decision be affirmed.

**STANDARD OF REVIEW**

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that

decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## **BACKGROUND**

Plaintiff was 53 years of age on her alleged disability onset date. (ECF No. 4-5, PageID.201). Plaintiff successfully completed high school and worked previously as a secretary, circuit board solderer, and product assembler. (ECF No. 4-2, PageID.40). Plaintiff applied for benefits on December 18, 2019, alleging that she had been disabled since October 31, 2014, due to depression, post-traumatic

stress disorder (PTSD), bi-polar disorder, anxiety, and panic attacks.   (ECF No. 4-5, 4-6, PageID.201-02, 230).

Plaintiff's application was denied, after which she requested a hearing before an Administrative Law Judge (ALJ).   Following an administrative hearing, ALJ Nicholas Ohanesian, in an opinion dated October 23, 2020, determined that Plaintiff did not qualify for disability benefits.   (ECF No. 4-2, PageID.29-89).   The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision.   (*Id.*, PageID.15-19).   Plaintiff later initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on June 30, 2019.   (*Id.*, PageID.31); *see also*, 42 U.S.C. § 423(c)(1).   Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status.   *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability.   *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).   If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.   *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).   The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an

exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate she is entitled to disability benefits and she satisfies her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315-16 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from: (1) vaginal prolapse with mixed urinary incontinence post-surgery; (2) bipolar disorder; (3) depression; (4) anxiety; and (5) post-traumatic stress disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (*Id.*, PageID.31-34).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform work at all exertional levels subject to the following limitations: (1) she is limited to simple, routine, unskilled work; (2) she

cannot work at a production rate pace or meet quota requirements; (3) she can tolerate only a few workplace changes; (4) she can have no more than occasional contact with supervisors and co-workers; (5) she is limited to working alone or in small groups of no more than ten people; (6) she can have only incidental contact with the general public; (7) she requires ready access to a bathroom, defined as less than a five-minute walk from her work situs; and (8) she will be expected to be off-task for less than ten percent of the workday. (*Id.*, PageID.23).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316. In satisfying this burden, the ALJ may rely on a vocational expert's testimony. *Ibid*.

In this case, a vocational expert testified that there existed more than two million jobs in the national economy that an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (ECF No. 4-2, PageID.80-87). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

### I.  Residual Functional Capacity

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). The ALJ found that Plaintiff retained the ability to perform work at all exertional levels [1] subject to significant non-exertional limitations.

Plaintiff argues that this determination is not supported by substantial evidence. Specifically, Plaintiff argues that she is entitled to relief because the ALJ failed to account for her shoulder impairment which limits her to light work. As Plaintiff notes, she was diagnosed, after the expiration of her insured status, with adhesive capsulitis, bursitis, and impingement syndrome of the left shoulder. (ECF No. 4-8, PageID.478-81). Plaintiff also reported, however, that her shoulder impairment did not begin until three months *after* the expiration of her insured status. (ECF No. 4-9, PageID.522, 567, 573). While Plaintiff speculates that her

---

[1] The jobs the vocational expert testified Plaintiff could still perform are all medium level jobs. (ECF No. 4-2, PageID.84-85). Thus, while the ALJ concluded that Plaintiff could perform work at all exertional levels, as a practical matter the present dispute is whether Plaintiff can perform medium level work or is instead limited to light or sedentary work.

ability to use her shoulder was limited prior to the expiration of her insured status, she has identified nothing in the record supporting this argument.

Moreover, Plaintiff has failed to identify anything else in the record indicating that she experienced physical impairments or limitations prior to the expiration of her insured status that precluded the performance of medium work. Plaintiff nevertheless argues that it is unreasonable to expect a woman in her mid-to-late 50s to perform medium level work. While this may be true in certain circumstances, the evidence in this case supports the ALJ's RFC assessment. Moreover, Plaintiff has identified no authority supporting the proposition that a woman of Plaintiff's age cannot, as a general proposition, perform medium level work.

The ALJ is tasked with determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). While the ALJ may not "play doctor" and substitute his own opinion for that of a medical professional, the ALJ is not required to tailor his RFC assessment to any particular opinion or item of medical evidence. *See, e.g., Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 157 (6th Cir., Aug. 18, 2009). Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004).

This is precisely what the ALJ in this matter did and the ALJ's RFC assessment is supported by substantial evidence. Plaintiff's argument for relief is simply that the ALJ should have weighed and evaluated the evidence differently. This is not grounds for relief, however. Accordingly, this argument is rejected.

Plaintiff also advances the related argument that, had she been limited to an RFC of light work, she would have been deemed disabled by the medical-vocational guidelines. The Court is not persuaded.

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that, "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00. In other words, a claimant may be awarded benefits if she satisfies the requirements of one of the particular rules correlating to a finding of disability. *See, e.g., Branon v. Commissioner of Social Security*, 539 Fed. Appx. 675, 679 (6th Cir., Oct. 2, 2013).

Plaintiff argues that, if she were limited to light work, she would be deemed disabled pursuant to Grid Rule 202.04. This Rule applies only where the claimant's past relevant work is considered "unskilled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.04. The ALJ, however, specifically found that Plaintiff's past

-8-

relevant work as a secretary was "skilled." (ECF No. 4-2, PageID.40). Thus, even if Plaintiff were limited to light work, the Rule she cites would not result in a finding that she is entitled to benefits.

## II.    Medical Source Opinions

On July 24, 2020, Dr. Jahandar Saifollahi completed a mental RFC form report regarding Plaintiff's ability to function. (ECF No. 4-9, PageID.655-57). Saifollahi asserted that Plaintiff was "moderately" or "markedly" limited in 15 of 20 areas assessed. (*Id.*, PageID.655-56). In a statement dated September 25, 2020, Dr. Husam Abed asserted that Plaintiff "is restricted to no heavy lifting over 20 lbs. This is a permanent restriction." (ECF No. 4-10, PageID.743). The ALJ found these opinions "unpersuasive." (ECF No. 4-2, PageID.38-39). Plaintiff argues that she is entitled to relief because the ALJ's assessment of these opinions is not supported by substantial evidence.

Because Plaintiff filed her application after March 27, 2017, the ALJ evaluated the medical opinions pursuant to 20 C.F.R. § 416.920c. This regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. § 416.920c(a). Instead, the ALJ is required to articulate his determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* § 416.920c(b)(1).

These factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. *Id.* § 416.920c(1)-(5). The ALJ must explain his consideration of the supportability and consistency factors, but absent circumstances not present here, is not required to explain how the remaining factors were considered. *Id.* § 416.920c(b)(2), (3). The regulations define "supportability" and "consistency" as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* § 416.920c(c)(1)-(2).

With respect to Dr. Saifollahi's opinion, it must first be noted that the doctor did not articulate any functional limitations that are inconsistent with the ALJ's RFC finding. Instead, the doctor simply checked boxes indicating that Plaintiff was "moderately" or "markedly" limited in a particular area. (ECF No. 4-9, PageID.655-56). Such fails to indicate, however, the extent to which Plaintiff's ability to function in a particular area is limited. The form invited the doctor to identify Plaintiff's functional limitations, but the doctor declined to offer such information.

-10-

(*Id.*, PageID.657). This shortcoming alone is sufficient to sustain the ALJ's assessment.

The ALJ went further, however, noting that Plaintiff's treatment history and findings on examination belies any argument that she is more limited than recognized in her RFC. A review of Dr. Saifollahi's records supports the ALJ's observation that he provided "relatively conservative treatment" to Plaintiff and that the doctor's treatment notes "do not appear to contain sufficient narrative statements or mental examination findings to provide a corroborative basis for the substantial degree of limitation he proposed." (ECF No. 4-2, 4-8, 4-10, PageID.38, 445-76, 661-701).

The ALJ also noted that Plaintiff's activities, including driving, shopping, preparing meals, housecleaning, washing laundry, attending church, camping, playing cards, using a computer, solving puzzles, reading, and watching television/movies, were inconsistent with the doctor's opinions. (ECF No. 4-2, PageID.37). Finally, the ALJ also noted that Dr. Saifollahi provided his opinion more than one year after the expiration of Plaintiff's insured status, but did not indicate that such applied to the period of time prior thereto.

Regarding Dr. Abed's opinion, the ALJ noted that such was inconsistent with the medical evidence and Plaintiff's activities. As noted above, the record simply does not support the argument that Plaintiff was limited to lifting 20 pounds prior to the expiration of her insured status. The ALJ further noted that Dr. Abed did not provide his opinion until more than one year after the expiration of Plaintiff's

-11-

insured status. The doctor likewise did not indicate that his opinion related to the period prior to the expiration of Plaintiff's insured status. This failure is significant considering the shoulder impairments Plaintiff experienced after the expiration of her insured status.

In sum, the ALJ's assessment of the opinions offered by Dr. Saifollahi and Dr. Abed comply with the relevant legal standard and are supported by substantial evidence. Accordingly, this argument is rejected.

### III. The ALJ Properly Assessed Plaintiff's Subjective Allegations

At the administrative hearing, Plaintiff testified that she experiences "a lot of memory loss," crying spells, and difficulty concentrating. (ECF No. 4-2, PageID.68-69). Plaintiff reported that she often will just remain in bed all day with the curtains drawn. (*Id.*, PageID.70-71). Plaintiff also reported that she experiences tremors daily. (*Id.*, PageID.77-78). Plaintiff also reported experiencing a variety of side effects from her medications, including confusion, dizziness, and nausea. (ECF No. 4-6, PageID.259). The ALJ, however, discounted Plaintiff's subjective allegations on the ground that such were not supported by the medical record or Plaintiff's activities. (ECF No. 4-2, PageID.36-37). Plaintiff argues that she is entitled to relief because the ALJ improperly discounted her subjective allegations.

While "pain alone, if the result of a medical impairment, may be severe enough to constitute disability," *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984), a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009).

Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard. First, it must be determined whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. *See* Titles II and XVI: Evaluation of Symptoms in Disability Claims, Social Security Ruling 16-3p, 2016 WL 1119029 at *3-4 (S.S.A., Mar. 16, 2016). Next, the intensity and persistence of the claimant's symptoms are evaluated to determine the extent to which such limit his ability to perform work-related activities. *Id.* at *4-9.[2]

As is also well recognized, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801

---

[2] Social Security Ruling 16-3p rescinded Social Security Ruling 96-7p. *Id.* at *1. The adoption of this new Social Security Ruling did not alter the analysis for evaluating a claimant's subjective statements. Instead, as the Social Security Administration stated, it was simply "eliminating the use of the term 'credibility' [so as to] clarify that that subjective symptom evaluation is not an examination of an individual's character." *Ibid.* As courts recognize, aside from this linguistic clarification, "[t]he analysis under SSR 16-3p otherwise is identical to that performed under SSR 96-7p." *Young v. Berryhill*, 2018 WL 1914732 at *6 (W.D. Ky., Apr. 23, 2018).

(6th Cir., July 29, 2004). But, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Ibid.* It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. *See, e.g., Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) ("[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable").

As discussed above, the record evidence supports the ALJ's conclusion that Plaintiff's impairments are not as severe or as limiting as Plaintiff asserts. Also, as the ALJ asserted, the record does not reveal that Plaintiff reported experiencing significant side effects from her medications. Plaintiff nevertheless invites the Court to re-weigh the evidence and reach a different conclusion. This the Court cannot do. The ALJ articulated a clear rationale for his conclusions regarding Plaintiff's subjective allegations and the ALJ's conclusions are supported by substantial evidence. Accordingly, this argument is rejected.

### IV. Plaintiff is Not Entitled to a Rehearing

Finally, Plaintiff argues that she is entitled to relief on constitutional grounds. Specifically, Plaintiff argues that, because the Commissioner of Social Security has been unlawfully appointed, it is unlawful for him to delegate to an ALJ the task of finding facts and resolving claims for disability benefits. Plaintiff further argues that the ALJ operated pursuant to regulations promulgated by the Commissioner in violation of the Constitution. Plaintiff argues that these circumstances render the "structure" of the Social Security Administration "constitutionally invalid" and renders invalid the decision denying his claim for benefits. In rejecting this argument, one court recently explained:

> The Court first finds that Commissioner's final decision was not constitutionally defective. Recently, in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the Supreme Court held that where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction caused his alleged harm. In *Collins*, the Court reasoned that the relevant agency officials were "properly appointed" pursuant to a statute that exhibited "no constitutional defect in the. . .method of appointment" and that "the unlawfulness of [a] removal provision" does not strip [an official] of the power to undertake the other responsibilities of his office[.]" The Court continued that "there is no reason to regard any of the actions taken" by the agency during this period "as void." *Id*. at 1787,1788 n. 23. In this case, Plaintiff, as in *Collins*, grounds his constitutional challenge only on the relevant removal restriction not on the propriety of the Commissioner's appointment and offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits. The Plaintiff simply argues that all actions taken by the Commissioner – and in turn his appointed ALJ's – are void due to the unconstitutional removal provision. However, *Collins* expressly rejects this view. *Id*. Therefore, the final decision of the ALJ is not constitutionally defective.

*Boger v. Kijakazi*, 2021 WL 5023141 at *3 (W.D.N.C. Oct. 28, 2021). The Court finds this rationale persuasive and notes that many other courts have likewise rejected this argument.[3] Plaintiff offers neither evidence nor argument that there exists a nexus between the allegedly unconstitutional removal restriction and the denial of his application for benefits. Accordingly, this argument is rejected.

---

[3] *See, e.g., Jones v. Kijakazi*, 2022 WL 1016610 at *12 (D. Del. Apr. 5, 2022); *Michelle D. v. Kijakazi*, 2022 WL 972280 at *6 (N.D. Ill. Mar. 31, 2022); *Michael H. v. Comm'r of Soc. Sec.*, 2022 WL 768658 at *15-18 (W.D.N.Y. Mar. 14, 2022); *Tucker v. Kijakazi*, 2022 WL 742744 at *2-3 (S.D. Fla. Mar. 11, 2022); *Burrell v. Kijakazi*, 2022 WL 742841 at *5 (E.D. Pa. Mar. 10, 2022); *Platt v. Comm'r of Soc. Sec.*, 2022 WL 621974 at *5-6 (S.D.N.Y. Mar. 3, 2022); *Juliana Jolean A. v. Kijakazi*, 2022 WL 595361 at *1-5 (N.D.N.Y. Feb. 28, 2022); *Jason V. v. Comm'r of Soc. Sec.*, 2022 WL 575703 at *5-7 (W.D. Wash. Feb. 25, 2022); *Colbert v. Comm'r of Soc. Sec.*, 2022 WL 556738 at *2 (N.D. Ohio Feb. 24, 2022); *Kathy R. v. Kijakazi*, 2022 WL 42916 at *3-5 (D. Me. Jan. 5, 2022), *adopted by* 2022 WL 558359 (D. Me. Feb. 24, 2022); *Kreibich v. Kijakazi*, 2022 WL 538261 at *6 (W.D. Wis. Feb. 23, 2022); *Taffe v. Kijakazi*, 2022 WL 542884 at *9-11 (S.D. Cal. Feb. 22, 2022); *Kowalski v. Kijakazi*, 2022 WL 526094 at *9-12 (M.D. Pa. Feb. 22, 2022); *Twila D.B. v. Kijakazi*, 2022 WL 425936, at *2-4 (C.D. Cal. Feb. 10, 2022); *Pepper v. Kijakazi*, 2022 WL 391577 at *2-3 (D.S.C. Feb. 9, 2022); *Rhonda W. v. Comm'r of Soc. Sec.*, 2022 WL 390802 at *6-8 (S.D. Ohio Feb. 9, 2022); *Vickery v. Comm'r of Soc. Sec.*, 2022 WL 252464 (M.D. Fla. Jan. 27, 2022); *Carla D. v. Kijakazi*, 2022 WL 264460 at *1-3 (E.D. Wash. Jan. 27, 2022); *Ramos v. Comm'r of Soc. Sec.*, 2022 WL 105108 at *2-4 (E.D. Cal. Jan. 11, 2022); *Nudelman v. Comm'r of Soc. Sec.*, 2022 WL 101213 at *10-13 (D. Ariz. Jan 11, 2022); *Mor v. Kijakazi*, 2022 WL 73510 at *3-5 (D.N.J. Jan. 7, 2022); *Hutchens v. Kijakazi*, 2021 WL 5834409 at *6-14 (M.D.N.C. Dec. 9, 2021), *adopted by* ECF No. 24 (M.D.N.C. Jan. 5, 2022); *Olimpiada v. Kijakazi*, 2022 WL 19678 at *4-5 (D. Nev. Jan. 3, 2022); *Benavidez v. Kijakazi,* 2021 WL 6062715 at *4 (D.N.M. Dec. 22, 2021); *Wybo v. Kijakazi,* 2021 WL 6052423 at *4 (W.D. Ky. Dec. 21, 2022); *Nathaniel H. v. Kijakazi*, 2021 WL 5921377 at *4-6 (D. Or. Dec. 15, 2021); *Clark v. Kijakazi*, 2021 WL 5905942 at *3-4 (E.D. Wis. Dec. 14, 2021); *Alice T. v. Kijakazi*, 2021 WL 5302141 at *18-19 (D. Neb. Nov. 15, 2021); *Robinson v. Kijakazi,* 2021 WL 4998397 at *3 (W.D.N.C. Oct. 27, 2021).

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within such time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: July 6, 2022                           /s/ Phillip J. Green
                                             PHILLIP J. GREEN
                                             United States Magistrate Judge